34 608
42 443
43 415
34 608
48 387
34 608
155 320
34 608
59 523
34 608
166a 270
34 608
71 1220
34 608
77 1462
34 608
84 2508

FLOYD GATES, Respondent, *v.* FRED GATES and Others, Appellants, Impleaded with ALVIRA B. GATES and Others.

*Agreement by a party to make a child his heir and give him a son's interest in his estate — right of the child thereunder — a statement in a complaint that the plaintiff was an heir at law is a mere conclusion, not an independent cause of action.*

Where a party, who has since died intestate, has, with the consent of his wife, entered into an agreement with the mother of an infant, whose father was dead, to make the child "an heir" and "to give him the same interest which a son would have in whatever property he owned or might have at the time of his decease," the child is entitled to such a share of his estate as a son would be entitled to as an heir, if the estate were divided among such children as the intestate might have at the time of his death, and where the intestate has died without issue or descendants the child is entitled to the whole estate, subject to the dower interest therein of the widow of the intestate.

An averment in a complaint in an action brought by the child, setting forth the contract and his rights thereunder, and also setting forth that he was the only heir and, therefore, entitled to the possession of the property, sets forth only a cause of action which is based upon the contract — the statement that the plaintiff was the only heir and, therefore, entitled to the possession of the property being a mere conclusion.

APPEAL by the defendants, Fred Gates and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cortland on the 3d day of March, 1898, upon the decision of the court rendered after a trial at the Cortland Special Term overruling the said defendants' demurrer to the plaintiff's complaint.

The complaint in this action alleges, among other things:

" That on or about the 1st day of Jan. 1862, this plaintiff then being an infant of the age of two years, his father being dead and his mother being the sister of the said Alonzo W. Gates' wife, the said Alonzo W. Gates, with the consent of his said wife, entered into a contract with the said Sophia Carr, this plaintiff's mother, whereby the said Sophia Carr, this plaintiff's mother, agreed to surrender up forever this plaintiff to the said Alonzo W. Gates, and to surrender and release all claims or rights of every name and nature which she had over said child by reason of being its mother, to the said Alonzo W. Gates, and whereby and in consideration of the said agreement of the said Sophia Carr the said Alonzo W. Gates agreed to take this plaintiff and to adopt him as his child, to rear, educate and maintain him, and to treat him as a member of his own family, and as a son in all respects, and to make this plaintiff an heir of the said Alonzo W. Gates, and to give to him the same interest which a son would have in whatever property he owned or might have at the time of his decease.

" That said agreement was fully understood and consented to by the wife of said Alonzo W. Gates, and was fully understood and agreed to by the said Alonzo W. Gates and by the said Sophia Carr, the mother of this plaintiff, and that immediately thereafter and in pursuance to said agreement the said Sophia Carr did surrender and give over to the said Alonzo W. Gates, this plaintiff, and released to the said Alonzo W. Gates, all rights or claims of every name and nature which she had to this plaintiff by reason of being his mother, and the said Alonzo W. Gates took and adopted this plaintiff as his child, took him into his family, and thereafter this plaintiff lived as a member of the said Alonzo W. Gates' family, took the name of the said Alonzo W. Gates and performed all the duties and obligations which a son owes to his parents to the said Alonzo W. Gates and his wife, and lived continuously with the said Alonzo W. Gates as his son and as a member of his family, and lived as a member of his household, except during temporary absences, continuously to the time of the marriage of this plaintiff, and thereafter, although this plaintiff, after his said marriage, which occurred on the 19th day of September, 1889, took up a residence apart from the said Alonzo W. Gates, he nevertheless continued to perform and dis-

charge his duties as a son to the said Alonzo W. Gates in all respects, and was treated as a son by the said Alonzo W. Gates up to the time of his decease, and that frequently during said time the said Alonzo W. Gates promised and agreed to so fix, arrange and dispose of his property so that at the time of his death this plaintiff should have the same interest in whatever property the said Alonzo W. Gates died possessed of as a son, but the said Alonzo W. Gates died intestate and without making any provision whatever as to the disposition of his property, and the plaintiff further alleges that he was, on or about the said first day of January, 1862, legally and formally adopted as the son of the said Alonzo W. Gates, and thereafter and up to the time of the death of the said Alonzo W. Gates said adoption was repeatedly and continuously affirmed and ratified by the said Alonzo W. Gates, and the said Alonzo W. Gates agreed to give to this plaintiff at the time of his death the same interest in whatever property he then had which a son would be entitled to, and the plaintiff alleges that, by reason of the facts aforesaid, he is the only heir now living who is entitled to share in the estate of the said Alonzo W. Gates, subject, however, to the rights and interests of the said defendant Alvira B. Gates, the widow of the said Alonzo W. Gates, deceased, and is entitled both in law and in equity to share in said estate as aforesaid.

" The plaintiff further alleges that, notwithstanding the facts aforesaid, the said defendants claim to be the only heirs and next of kin of the said Alonzo W. Gates and claim the right to his estate to the exclusion of this plaintiff.

" That when letters of administration were issued, as aforesaid, no citations whatever were issued to or served upon this plaintiff."

Judgment was demanded :

" 1st. That he be adjudged and decreed to be the son and heir at law of the said Alonzo W. Gates, deceased, and owner in fee simple of the lands and tenements hereinbefore described, subject to the right of dower of the said Alvira B. Gates.

" 2nd. That this plaintiff be adjudged and decreed to be entitled to a specific performance of the contract herein set forth.

" 3rd. That this plaintiff have an order of this court, ordering and directing that the said defendants Frank H. Sears and Alvira B. Gates, as administrator and administratrix of the estate of Alonzo

W. Gates, deceased, and Berintha E. Owen, Olive M. Kelley, Clara Kimball, Lottie Anderson, Ella Gates, Anna Miller and Fred Gates be required to make, execute and deliver to this plaintiff a quitclaim deed of said premises, and for such other or further relief as to the court shall seem just and equitable, together with the costs and disbursements of this action."

*B. A. Benedict,* for the appellants.

*Nathan L. Miller,* for the respondent.

Parker, P. J.:

It was said by Justice Barrett in the case of *Gall* v. *Gall* (64 Hun, 601) that "it is undoubtedly the settled law of this State that 'where a certain and definite contract is clearly established, even though it involves an agreement to leave property by will, and it has been performed on the part of the promisee, equity in a case free from all objections on account of the adequacy of the consideration or other circumstances rendering the claim inequitable, will compel a specific performance,'" and such case was affirmed without opinion in 138 New York, 675.

This case, and the authorities therein cited, are direct authority for granting the relief asked for in the case at bar, provided the contract relied upon is sufficiently definite. (See, also, *Godine* v. *Kidd,* 64 Hun, 585.)

That the contract was actually made in the terms set forth in the complaint, and fully performed on the part of the promisee, must, upon this demurrer, be assumed. And that it involves an obligation on the promisor's part to leave property by will is no objection to its specific performance.

But whether the contract as thus set forth is of that certain and definite character which is requisite in order to compel a specific performance is the serious question in this case, and one over which I have great doubts.

The substance of the contract on deceased's part was to make the child "an heir,   *   *   *   and to give him the same interest which a son would have in whatever property he owned or might have at the time of his decease."

A literal construction of this language leaves it exceedingly uncer-

tain what the promisor has undertaken to do. At the time the contract was made, there was no method known by which Alonzo W. Gates could make the child his "heir" in the accurate and legal signification of that term. By no proceeding known could he imbue him with the legal capacity to inherit. Moreover, if he had been able to do so, that promise literally taken involves no agreement to not disinherit him. Though made an heir, he would not thereby have acquired any certain right to any part of Alonzo W. Gates' estate.

The further agreement to "give him the same interest which a son would have" is also open to the same criticism. A son, by strict legal right, has no interest whatever in his father's estate. He may be given a greater or lesser portion thereof, as the father shall desire, or he may be entirely disinherited. A promise to give one "the same interest which a son would have" in the promisor's estate, literally construed, is but a promise to give whatever the promisor may choose to give.

And the objection is very forcibly urged upon us by the appellant's counsel that such a promise is of such an indefinite and uncertain character that it is not one which equity could or, under its well-settled rules, will attempt to specifically enforce. (22 Am. & Eng. Ency. of Law, 1006.)

It cannot be doubted, I think, but that the parties to this contract understood that Alonzo W. Gates was not only to adopt the child and rear him in his own family as if he were his own son, but that upon his decease he was to leave him some portion, at least, of the property which he might then own. The mother parted with her child upon that understanding, and the child, during all the years that Gates lived, took his name, and seems to have at all times recognized and faithfully performed those duties which, as a son, would be due from him to Gates as his father. Both parties seem to have fully performed the contract up to the time of Gates' death, and the only breach complained of is that Gates has never performed that part of it relating to the disposition of his property after his death.

Though the literal meaning of the words used do not import such an agreement, the force that is given to them in their general and popular use, and all the circumstances of this case, indicate that

such must have been the intent of the parties. An agreement to make a child one's heir and to give him a son's interest in his estate, if the mother would part with him then, certainly does not indicate an arrangement under which the child is to receive nothing whatever from the estate. There was no object or reason for making any promise upon that subject if it was to have no other meaning than that Gates should be at liberty to give him a portion of his estate if he so desired. Undoubtedly both parties understood those words as a promise to give the child some portion of the estate upon Gates' death; and the question is, what portion of the estate can it be fairly said Gates was thereby obligated to give? Does the language used specify with sufficient precision the share which Gates thereby became obligated to give to authorize a specific performance of it?

Assuming that the parties understood that the child was to have some portion of the estate, we are led naturally, I think, to the conclusion that he was to have such a share as a son would be entitled to *as an heir*, if the estate were divided among such children as Gates might have at the time of his death. The share which an heir would take suggests equality with other children; and, on the supposition that Gates was to give the child some share, the whole context fairly indicates that he was to give him such a share as he would be entitled to under the Statute of Descents.

In other words, though he could not literally make him his heir, he could, by will, give him the same share which, as his son, he would inherit, and such, I conclude, to be the fair construction of the language used. So construed, there is no difficulty in specifically performing it. Gates, at the time he died, had no children nor descendants living. The plaintiff, therefore, if he could have inherited, would, as an heir, have been entitled to the whole estate, and under the contract Gates should, by testamentary devise, have given him the whole. Not having done so, a decree may be made against those who have succeeded to his title, requiring them to make the proper conveyance. (*Colby* v. *Colby*, 81 Hun, 221.) Under this construction the contract did not require Gates to give all his property to the plaintiff to the exclusion of his own children; and, therefore, it is not obnoxious to the criticism that it was against public policy, and for that reason should not be enforced.

I, therefore, conclude that there is a cause of action set up in the complaint.

Upon the question as to whether two causes of action are improperly joined, I do not think that the amended complaint is obnoxious to that charge. The only cause of action set forth is the one based upon the contract. The averment that he was the only heir, and, therefore, entitled to the possession of the property, is the averment of a mere conclusion, and one that is clearly negatived by the facts which are elsewhere set forth. But if any cause of action other than that on the contract is set forth, it is one arising out of the same transaction, and hence the demurrer cannot be sustained upon that ground.

My conclusion is that the interlocutory judgment overruling the demurrer should be affirmed, with costs, and leave should be given defendants to answer over upon payment of the same within twenty days after notice of this order.

All concurred.

Interlocutory judgment affirmed, with costs, with leave to the defendant to answer over within twenty days after notice of this order, upon payment of costs.