HEALY v. HEALY et al.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. STATUTE OF FRAUDS—PAROL CONTRACT OF ADOPTION—PART PERFORMANCE—ENFORCEMENT.

A parol contract of adoption, whereby it is expressly understood that a child shall be supported, educated, and maintained during her lifetime by her adopted father, and that at his death she shall receive the share of his estate to which she would have been entitled had she been his own offspring, will be specifically enforced, at the suit of such child, where completely performed, except that portion of it requiring that the adopter make suitable provision for the child in event of .his death; it being within the meaning of the provision of the statute · of frauds (2 Rev. St. [Banks & Bros.' 9th Ed.] p. 1885, § 10) providing that nothing therein contained shall be construed to abridge the powers of courts of equity to compel specific performance of an agreement in case of part performance of such agreement.

2. SPECIFIC PERFORMANCE—CONTRACTS—SUFFICIENCY OF CONSIDERATION.

A contract of adoption is based on a sufficient consideration to warrant a decree of specific performance, where, on a promise that the child shall be educated, cared for, and allowed to share in the estate of the adopter as if she was his own offspring, the mother surrenders all control over such child.

3. SAME—DEFINITENESS OF CONTRACT.

A parol agreement of adoption, whereby the adopter is to care for and maintain plaintiff as his own child, to give her his name, to teach her

to know him and his wife as her parents, and to provide for her future maintenance by giving her the share of an own child in his estate, is sufficiently definite to be specifically enforced.

**4. SAME—CONTRACT OF ADOPTION—PUBLIC POLICY.**

  Specific performance of a contract of adoption, wherein the adopted child was promised the share of an own child in the adopter's estate, is not against public policy.

**5. SAME—INJUSTICE TO THIRD PARTIES.**

  Specific performance of a contract of adoption providing that the adopted child should have the share of an own child in the adopter's estate will not be denied on the ground that it is unjust to innocent third parties, where such an enforcement does not diminish the dower interest of the widow in the adopter's estate, and the other children of adopter receive what they would be entitled to under the law of descent were plaintiff a sister in blood, instead of by adoption.

**6. WITNESSES—TRANSACTIONS WITH DECEDENT.**

  Evidence of plaintiff's mother is admissible in an action to enforce the specific performance of a contract of adoption whereby plaintiff was to receive the share of an own child in the adopter's estate, though such contract was entered into by the mother with the adopter, who is now deceased, and the action brought against his representatives, since the mother is not a party interested in the event, or a person through or under whom plaintiff derives her interest, within the meaning of Code Civ. Proc. § 829.

Appeal from equity term, Steuben county.

Action by Neva C. Healy against Dorus Healy, as administratrix, and others. From a judgment in favor of plaintiff (66 N. Y. Supp. 82), defendants appeal. Affirmed.

This action, which was commenced on the 28th day of November, 1898, was brought to enforce the specific performance of a parol contract which it is claimed was entered into in the year 1877 between Jennie D. Chichester, the mother of the plaintiff, and one Joshua Healy, now deceased. From the uncontradicted evidence contained in the record before us, it appears that Mrs. Chichester, whose husband was the brother of Healy's first wife, gave birth to the plaintiff on the 14th day of June, 1874. In about two years thereafter Henry Chichester, the father of the plaintiff, died, leaving his widow and child in destitute circumstances. Thereupon Joshua Healy, who was a well to do farmer, with a wife, but no children, proposed to Mrs. Chichester that she should give the plaintiff, Neva, to him. This proposition at first met with an absolute and firm refusal; but in about six months thereafter, it having in the meantime become apparent that Mrs. Chichester was unable to support herself and child, she wrote Healy, asking if he still wished Neva, and, upon being informed that he did, she sought a personal interview with him, which resulted in his taking the child into his family and virtually adopting her, the mother then and there surrendering all claim and control over her. The new relation thus established continued without interruption until the year 1886, when Mrs. Healy died without issue. During all this time the plaintiff lived with the Healys, rendering such service as would naturally be expected from a daughter in the circumstances in which she was placed, and receiving in return the same care, maintenance, and affection she would have been entitled to had the Healys been her own parents. On the 29th day of March, 1894, Joshua Healy was married to the defendant Julia C. Healy; and on the 23d day of July, 1897, he died intestate, leaving his widow him surviving, and also the defendant Anna C. Healy, who was born July 28, 1895, and was the only issue of his second marriage. He also left personal estate which was about sufficient to pay his debts, and real estate estimated to be worth between nine and ten thousand dollars. After the death of Mrs. Healy the plaintiff continued to live with her adopted father down to the time of his death, except for a few months, when she was learning the millinery trade in Rochester, and was at all times treated

by him as though she was his own child. She was taught to call him "father," and the first Mrs. Healy "mother," and supposed that they actually bore that relation towards her until she was informed to the contrary after she had reached the age of 14 years. She also received similar recognition and treatment from Mr. Healy's second wife. It was claimed and the evidence in the case tends to prove that the plaintiff was given by her mother to Mr. Healy upon the express condition and understanding that she was to become to him, and be forever thereafter, as his own child, and that at his death she was to receive the share of a child in his estate. Upon the facts thus briefly detailed the trial court decided in favor of the plaintiff, and directed that she recover one-half of the real estate of which Joshua Healy died seised, subject to the dower right of the defendant Julia C. Healy therein, and also one-third part of his personal property which shall remain after the payment of his debts and the expenses of administration. From the judgment entered upon such decision this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Fletcher C. Peck, for appellants.

Thomas Raines, for respondent.

ADAMS, P. J. We think the facts of this case not only warrant the conclusion reached by the learned trial justice, but that they are such as to fully justify a court of equity, within the rigid rules applicable to cases of this character, in decreeing the relief sought through the medium of this action. The evidence upon the part of the plaintiff satisfactorily establishes the fact that, at the time Mrs. Chichester surrendered the plaintiff into the control and custody of Joshua Healy, it was upon the express understanding and promise that her child should be supported, educated, and maintained during the lifetime of her adopted father, and that at his death she should receive the same share of his estate to which she would have been entitled had she been his own offspring. The mother testified unequivocally that such was the agreement, and the other evidence in the case tends to strengthen rather than discredit her testimony. Certain it is that the terms of the contract, as testified to by Mrs. Chichester, were faithfully and literally fulfilled by Mr. Healy up to the time of his decease, save only that he omitted to perform that part of it which required that he should make suitable provision for his adopted daughter in the event of his death. The contract was a parol one, it is true; but it was fully performed upon the part of the plaintiff when she was transferred into the family of Mr. Healy, and assumed towards him and his wife the relation of daughter. It was likewise fully performed by Mr. Healy, save in the one particular just adverted to, and under these circumstances it becomes obligatory upon a court of equity to intervene in order to prevent a wrong so gross as to be tantamount to a fraud upon the plaintiff; for it cannot be doubted, if Mrs. Chichester (now Mrs. Seager) is to be believed (and there is nothing in the case which directly impeaches her evidence), that the one controlling motive which induced her to part with her child was the assurance by Mr. Healy that he would not only furnish that child a comfortable home during his lifetime, but that ample provision should also be made for her future comfort and support in the event of

his death. The case, so far as this particular feature of it is con-
cerned, appears to fall directly within the section of the Revised
Statutes which provides that "nothing in this title contained [stat-
ute of frauds] shall be construed to abridge the powers of courts
of equity to compel the specific performance of agreements, in case
of part performance of such agreements" (2 Rev. St. [Bank & Bros.'
9th Ed.] p. 1885, § 10), and likewise within certain principles of
equity jurisprudence which are too well settled to admit of contro-
versy at this late day (Kenyon v. Youlen, 53 Hun, 591, 6 N. Y. Supp.
784; Roberge v. Winne, 144 N. Y. 709, 39 N. E. 631). It is doubt-
less the rule that, before enforcement of such a contract will be
decreed by a court of equity, it must be made to appear affirmatively
and by the clearest evidence that it was founded upon an adequate
consideration, that it is certain and definite in all its parts, and that
it is in no wise unjust to innocent third parties or contrary to
public policy. Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332, affirmed
in 138 N. Y. 675, 34 N. E. 515. Each of these essential elements,
however, seems to be present in the case before us. When Mrs.
Chichester, compelled by the inexorable requirements of her impover-
ished condition to part with her child, surrendered all control over
that child, she furnished the largest possible measure of consider-
ation for the promise which that surrender induced,—a considera-
tion the adequacy of which assuredly cannot be questioned, when it
is fully understood what that surrender involved. Nor do we think
that the contract can be successfully assailed for uncertainty or
indefiniteness. The agreement on the part of Mr. Healy, as found by
the trial court, was to care for and maintain the plaintiff as his own
child, to give her his name, to teach her to know him and his wife
as her parents, and finally to provide for her future maintenance
by giving to her the share of an own child in his estate. This lan-
guage is surely susceptible of but one construction, and that is that
the plaintiff was to share in her adopted father's estate in the same
manner and to the same extent as though she had been his child;
and, in the absence of any testamentary provision to that effect, we
see no difficulty in decreeing specific performance upon the basis
adopted by the trial court. Such an enforcement of the contract
violates no principle of public policy, nor does it work injustice to
any one. The widow's dower interest, which is all she is entitled to
in any aspect of the case, is in no wise diminished; and, while the
infant defendant receives only half as much as she otherwise would,
she nevertheless receives precisely what she would be entitled to un-
der the law of descents if the plaintiff were her sister in blood, in-
stead of by adoption. This case, although somewhat peculiar in its
circumstances, is not without precedent; and there is ample author-
ity to support the view of it taken by the court below, and the one
which, as already indicated, commends itself to our approval. God-
ine v. Kidd, 64 Hun, 585, 19 N. Y. Supp. 335; Gates v. Gates, 34
App. Div. 608, 54 N. Y. Supp. 454; Shakespeare v. Markham, 10
Hun, 311. See, also, Gall v. Gall, supra.

But it is insisted that the error was committed by the learned
trial court in permitting the plaintiff's mother to testify, over the

defendants' objection, to interviews between her and Mr. Healy in the course of which it is claimed that the contract sought to be enforced was entered into; the contention being that, under section 829 of the Code of Civil Procedure, this witness was incompetent to testify to a conversation which took place between herself and the defendants' intestate. We find ourselves unable to assent to this proposition. Mrs. Chichester was in no disqualifying sense "interested in the event" of the action. Eisenlord v. Clum, 126 N. Y. 552, 27 N. E. 1024; Connelly v. O'Connor, 117 N. Y. 91, 22 N. E. 753. And, while she was undoubtedly the medium through whom the contract was entered into on behalf of her infant child, yet it cannot be said that she is the person "through or under whom" the plaintiff derives her interest or title "by assignment or otherwise," as that term is used in the section above mentioned. The subject-matter of the action is the estate of Joshua Healy, deceased; and whatever interest the plaintiff has in that estate she derived from Joshua Healy, and not from her mother. Godine v. Kidd, supra. Our conclusion, upon the whole case, is that it was properly disposed of by the trial court, and that the judgment appealed from should consequently be affirmed.

Judgment affirmed, with costs payable out of the estate. All concur.