TOWNSEND v. PERRY et al.

(Supreme Court, Equity Term, Yates County. July 9, 1910.)

1. EVIDENCE (§ 372*)—PRESUMPTIONS—ANCIENT WRITINGS.

Where a writing purporting to bear the signature of a decedent, found among his papers after his death, appears to be a very ancient writing, the signature is presumably genuine.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.*]

2. WILLS (§ 58*)—CONTRACT TO DEVISE—GENUINENESS—EVIDENCE—SUFFICIENCY.

On an issue as to whether certain signatures to a contract to leave property to plaintiff by will were forged, evidence *held* insufficient to show such to be the case.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 165; Dec. Dig. § 58.*]

3. SPECIFIC PERFORMANCE (§ 86*)—CONTRACT TO DEVISE—ENFORCEMENT.

Where plaintiff's mother, when he was about four years of age, gave custody of him to a man and his wife on an understanding that he was to become a member of their family, and the man and his wife and plaintiff's mother by written contract agreed that the mother should give up all claims to plaintiff, and that in case of the death of the husband and wife without children plaintiff should inherit their property, and plaintiff lived with them until his majority, the contract being fully performed by plaintiff and his mother, was enforceable by him after the death of the husband and wife as against their heirs.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 223, 224; Dec. Dig. § 86.*]

4. JUDGMENT (§ 707*)—PERSONS CONCLUDED.

Plaintiff, claiming under a contract to devise land, not having been a party to litigation between the heirs of decedent and the heirs of decedent's wife as to who owned the property, and at the time of the action having had no knowledge of the contract in question, was not bound or affected by the litigation.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1230; Dec. Dig. § 707.*]

Action by Frank B. Townsend against Ezekiel C. Perry and others. Judgment for plaintiff.

The plaintiff in this action seeks to have it established that he is the owner of lands in Yates county formerly owned by Mary J. Townsend, deceased. The action is brought against her heirs at law and their grantees. The plaintiff claims title by reason of a contract made between his mother, Harriet A. Eaves, and Cyrenius C. Townsend and Mary J. Townsend on January 24, 1862, by which the Townsends agreed to take the plaintiff and give him a good education, and at their death he to have all of their property, provided they had no children of their own, and, if they did have children, then he should share equally with them, and that the plaintiff's mother would give up all claims on him and would not try to get him away from the Townsends. March 23, 1890, Cyrenius C. Townsend deeded the lands in question to his wife, Mary J. Townsend. She died February 19, 1905, and he died March 15, 1905. Both died intestate. They left no descendants. The property passed into the possession of the heirs of Mary J. Townsend; but they since deeded it away. The facts fully appear in the opinion.

Sebring & Cheney, for plaintiff.
Michael A. Leary, for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARK, J. In 1861, plaintiff's father died in the county of Yates, leaving his widow, Harriet A. Eaves, and four small children; the plaintiff, whose name was Charles Eaves, being the youngest. Plaintiff's mother was in destitute circumstances, and was obliged to go with her children to the Yates county poorhouse, where she resided for a considerable time.

Cyrenius C. Townsend and Mary J. Townsend, his wife, were prosperous farmers residing in the town of Jerusalem, Yates county, and having no children. Late in 1861 they applied to the county authorities for a boy, and the county physician took Harriet A. Eaves and her son Charles (this plaintiff) to the home of the Townsends, and from that time until his marriage plaintiff lived with Mr. and Mrs. Townsend, was called by them, and was known in the community as, their son, going by the name of Frank B. Townsend, and he remained a member of their family until his marriage, after arriving at his majority. After his marriage plaintiff resided on one of Mr. Townsend's farms for several years, and finally moved with his family to the village of Penn Yan, a few miles from the Townsends.

From the time Mr. and Mrs. Townsend took the plaintiff from the Yates county poorhouse, when he was a child between three and four years of age, down to the time of his marriage, he was a member of their family, and was cared for by them and treated by them as a child of their own, and he performed in turn such services for them as would usually be performed by a son. Plaintiff lost track of his mother, Harriet A. Eaves, who remarried, and her life thereafter until her death in 1903, and the life of his brothers and sisters were in an entirely different channel and atmosphere from that of the plaintiff.

Mary J. Townsend died intestate February 19, 1905, and the defendants, the Perrys, are her heirs at law and next of kin, and upon her death claimed title to all the property described in the complaint.

Cyrenius C. Townsend died intestate March 15, 1905. Mr. Townsend had been a successful farmer and had accumulated the various parcels of real property described in the complaint. About March 23, 1890, he executed a deed of said real estate to his wife, Mary J. Townsend. The deed was without consideration, other than love and affection. The instrument was not recorded until nearly a year after Mr. and Mrs. Townsend's deaths; Mr. Townsend remaining in possession of the real estate described in the deed from the time of its date down to the time of his death.

It is the contention of the plaintiff that after he had been at Mr. Townsend's a short time, and a sufficient length of time for them to determine whether they desired to adopt him or not, Mr. and Mrs. Townsend and his mother entered into an agreement, in writing signed by them, of which the following is an exact copy:

"Agreement made this 24th day of January, 1862, between Cyrenius Townsend and Mary J. Townsend of the town of Jerusalem, Yates Co., N. Y., partys of the first part, and Harriet Eaves, party of the second part, in consideration of one dollar, partys of the first part agree to take Charles Eaves son of Harriet Eaves and give him a good education and at our death he is to have all of our property providing we have no children of our own if we do

have children then he shall share equal with them. It is further agreed that Harriet Eaves gives up all claims on her son and will not try to get the boy away.                                            Cyrenius C. Townsend.

"Mary J. Townsend.

"Harriet A. Eaves."

Plaintiff had no knowledge of the existence of this writing until September, 1906, when he found it among his mother's effects at the home of her granddaughter, plaintiff's niece, where shortly after her death it had been taken with other papers belonging to her. At the time of Cyrenius C. Townsend's death, his relatives were at his residence and refused plaintiff's request that he be allowed to examine any papers in the possession of Mr. Townsend.

Plaintiff asserts that the property described in the complaint belongs to him by virtue of the terms of the written agreement above quoted. Defendants deny that any such paper was ever made, and contend that the instrument and the signatures thereto are forgeries, and they endeavor to support that contention by the testimony of handwriting experts, who declare that the signatures to the paper in question are forgeries, and a paper expert, who claims that the paper on which the agreement in question was written is made of wood pulp, and that kind of paper was not manufactured in 1862, when the contract bears date.

On the other hand, the plaintiff produced witnesses who testified that the paper on which the agreement was written was very old. One witness, a paper manufacturer, testified that there was an ingredient in it that looked like wood pulp, but that it might be straw pulp, and while it is the contention of the defendants that the wood pulp was not used in the manufacture of paper until 1875, long after the date of this alleged agreement, it is a fact that straw pulp has been used in the manufacture of paper for centuries, and wood pulp was made and used in the manufacture of paper in 1865. 2 International Encyclopedia, 255.

Another witness for the plaintiff, who had dealt in stationery for 46 years, testified that he had handled paper similar to that on which the alleged agreement was written from his earliest experience.

Defendants produced three handwriting experts, who never saw any of the parties whose names appear on the instrument in question, and who had been employed at liberal figures to examine the paper and give testimony as experts, who unhesitatingly pronounced the signatures forgeries, and one of them went so far as to say that one person wrote the body of the instrument, and all three signatures, and that that person was a woman. It will thus be seen that this witness goes even further than an ordinarily zealous expert, by testifying to the sex of a person who wrote an instrument more than 47 years ago, and that is rather extreme even for a handwriting expert. These experts used certain conceded signatures of Mr. and Mrs. Townsend, and one traced signature of Mrs. Eaves, as standards, and were able to point out numerous similarities in words and letters; but on cross-examination they admitted also that in many respects these signatures were dissimilar, so at the end it reached a position always attained under similar circumstances, and that is

that handwriting experts invariably find similarities in signatures in proportion as they are needed to establish the contentions of the side which employs them, and greater credence is here given to the testimony of old neighbors, who had seen the handwriting of the persons whose writing and signatures were the subject of controversy, and had seen them sign their names, than to rely on the testimony of paid handwriting experts, who had never even seen the persons whose signatures were in question, and of course had never seen them write or sign their names. The testimony of handwriting experts should of course be given due credence; but, in a case like this, where we have testimony on the other side of disinterested neighbors and friends who have seen the parties whose handwriting is in controversy write their names occasionally, I think the testimony of such witnesses is entitled to greater credence, and especially where, as in this case, the instrument in question is in harmony with the statements often made by both Mr. and Mrs. Townsend, who it is claimed executed the instrument in question.

Plaintiff produced an instrument called on the trial No. 2 of Exhibit 3, which was evidently a portion of an old promissory note, and it bore the names of Cyrenius C. Townsend and Mary J. Townsend, and even the handwriting experts were obliged to admit that the signatures on this exhibit were very similar to the signatures on the agreement in question. This was a very ancient writing and was found among the papers in the possession of Mr. Townsend when he died. The signatures on that paper were undoubtedly the genuine signatures of Mr. and Mrs. Townsend, and, if they were, it is additional evidence that their signatures on the writing in question were their genuine signatures, as a comparison of the signatures will readily disclose. This paper No. 2 of Exhibit 3 was in Mr. Townsend's possession. Its appearance shows that it is a very ancient writing, and it is presumed that the signatures thereon are genuine. Bell v. Brewster, 44 Ohio St. 690, 10 N. E. 679.

The standards of the handwriting of Mr. and Mrs. Townsend, and also of Mrs. Eaves, were written at periods very remote from the time when the instrument in question was written and under entirely different circumstances; but upon a careful examination of them all, and considering all the evidence in this case bearing upon the subject, I am convinced that the contention of defendants that the instrument in question was a forgery, and the signatures thereto were forgeries, is not well founded.

Without quoting the testimony at length, it is sufficient to say that from a very short time after Mr. and Mrs. Townsend took the plaintiff to reside with them, they made numerous statements at various times to their neighbors and others to the effect that they had taken this plaintiff as their own child; that they had adopted him; that they had papers to show for it; that plaintiff's mother had released all claim to him, and if they should ever have any children of their own he would share equally with them in their property, but if they never had children plaintiff would inherit all their property when they died.

The plaintiff has established, by evidence that is clear and satisfactory, not only the written contract above referred to, but also he has established the agreement on the part of Mr. and Mrs. Townsend that he should have their property when they died in case they had no children, and should share in their property equally with any children that might be born to them, by many statements made by both Mr. and Mrs. Townsend to several wholly disinterested witnesses. The contract was fully performed by the plaintiff and his mother. She gave her child to the Townsends, releasing all claim to him, and, in turn for the services and companionship of the boy, they agreed to give him their property when they were through with it.

The contract having been fully performed on the part of the plaintiff and his mother, there is no reason why it should not be performed on the part of Mr. and Mrs. Townsend. The agreement was not with Mr. Townsend alone, which could possibly prejudice his wife; but it was an agreement entered into by both Mr. and Mrs. Townsend that, in case they had no children, the plaintiff should have whatever property was left after they were both through with it. That was the consideration upon which this unfortunate woman, an inmate of the poorhouse, consented to part with her boy, and the contract, having been fully established by evidence that is clear and satisfactory, and it being founded upon an adequate consideration, and being certain and definite in all its parts, should be enforced. Healy v. Healy, 55 App. Div. 315, 66 N. Y. Supp. 927, affirmed 166 N. Y. 624, 60 N. E. 1112; Gates v. Gates, 34 App. Div. 608, 54 N. Y. Supp. 454; Brantingham v. Huff, 43 App. Div. 414, 60 N. Y. Supp. 157; Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332, affirmed 138 N. Y. 675, 34 N. E. 515.

The enforcement of this contract does no injustice to any third party for the reason that on more than one occasion Cyrenius C. Townsend, when he stated to disinterested neighbors that this plaintiff was his child, that he was a good boy, and that he should have their property when he and his wife were through with it, also stated that neither his own relatives (the Townsends) nor his wife's relatives (these defendants, the Perrys), should ever have any of his property. Mr. and Mrs. Townsend never had any children, the defendants contributed in no way to the accumulation of his property, and what would be more natural and equitable than that this plaintiff, the only person who ever bore to them anything like the relation of a child, and who had lived with them almost from infancy, should have their property when he and his wife were through with it, just as the paper in question plainly states, and as both Mr. and Mrs. Townsend as plainly stated to many of their neighbors on various occasions?

This case should be determined upon the facts as established upon the trial, and they differ from the facts in any case that has been called to my attention.

In the case of Hanly v. Hanly, 105 App. Div. 335, 93 N. Y. Supp. 864, there was no writing. Plaintiff sought to establish an oral agreement by interested witnesses, an aunt and his father.

The same may be said of the case of Mahaney v. Carr, 175 N. Y.

454; 67 N. E. 903, where an oral agreement was sought to be established by evidence of claimant's father, and in that case it referred to property that decedent might acquire after the alleged agreement was made.

In the case of Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118, the party, a part of whose property plaintiff sought to acquire, left children, two daughters, and he left a will wherein plaintiff's intestate was referred to as his nephew, and referred to his daughters as "our children," showing that it was testator's intention that plaintiff should not share in his estate as a child, and the contract was sought to be established by testimony of claimant and his mother, both highly interested witnesses; but there was no letter or writing of the deceased to the effect that plaintiff was to share in his property.

In this case the writing is established. Mr. and Mrs. Townsend never had any children of their own. Neither of them left any will, and the claim of the plaintiff is sustained by overwhelming testimony of disinterested witnesses that both Mr. and Mrs. Townsend had repeatedly stated that plaintiff was their boy, they had adopted him, he was a good boy, and that when they were through with their property he should have it.

The contract being established by evidence of neighbors who were familiar with the handwriting of the signers, and it being in accordance with the oft-expressed wishes of both Mr. and Mrs. Townsend that plaintiff should have their property when they were through with it, and they both being dead, a court of equity, being well satisfied from the evidence as to the intention and wishes of both Mr. and Mrs. Townsend, should see to it that their wishes are respected and carried out. Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St. Rep. 647; Healy v. Healy, supra.

A general release was introduced by the defendants, having been executed by the plaintiff on the settlement of some litigation he had with Mr. Townsend with reference to services rendered. Whatever ill feeling may have been caused on account of that litigation was forgiven, and both Mr. and Mrs. Townsend were entirely friendly with plaintiff long before they died, and the release was intended to settle only such matters as were involved in that litigation, and could not possibly affect plaintiff's claim here for the reason that when he executed the release he had no knowledge of the contract sought to be established here.

After the death of Mr. Townsend, there was litigation between his heirs and the heirs of his wife as to who owned the property described in the complaint. Plaintiff was not made a party to such litigation. He had no knowledge of the contract in question at the time that action was tried, and he is in no way bound or affected by it.

While it is true, as urged by the learned counsel for defendant, that contracts of this character are becoming common and must be scrutinized with great care, the fact remains that, if they are established by reliable evidence and are founded upon sufficient consideration, they should be enforced.

In this case I am satisfied that the contention of the plaintiff has been established by evidence that is clear, reliable, satisfactory, and

based largely upon the testimony of disinterested witnesses; it is founded upon a valuable and sufficient consideration, and on the death of the survivor of Mr. and Mrs. Townsend plaintiff became the owner in fee of the property described in the complaint.

If I am correct in these conclusions, plaintiff is entitled to judgment in accordance with the terms of the prayer in his complaint, with the costs of this action.

Findings may be submitted and judgment entered accordingly.