(63 App. Div. 340.)

### SEED v. JOHNSTON et al.

(Supreme Court, Appellate Division, Second Department. July 25, 1901.)

1. CONTRACTS—CONSIDERATION IN INSTRUMENT.

Where a contract provided for the payment to the plaintiff of $600 per annum, in monthly installments of $50, for the rest of his natural life, a new cause of action arises at the expiration of every month.

2. JUDGMENTS—RES JUDICATA.

Defendants contracted to pay plaintiff $600 per annum, in monthly installments of $50, for the rest of his natural life, for advice and use of name in defendants' business. Plaintiff brought an action to recover a monthly installment due. The action was tried in the municipal court on oral pleadings, and the recovery was for services rendered. On the next installment falling due, plaintiff sued for breach of contract and defendants pleaded the judgment recovered, as res adjudicata. No written pleadings were filed, and no record kept, except the stenographer's minutes. A third action was brought in the same court for the third installment, and the evidence of the former trial was introduced, defendants pleading res judicata. *Held* that, new causes of action arising on the installments falling due, the judgment in one action was not a bar to a subsequent action for the same amount for another period, in the absence of any record showing that all of the issues which might have been tried had been disposed of.

Hirschberg, J., dissenting.

Appeal from municipal court, borough of Brooklyn.

Action by Joseph H. Seed against George W. Johnston and another, trading under the name of the Seed Filter Company. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

John S. Jenkins, for appellants.
John H. Webster, for respondent.

WOODWARD, J. On the 1st day of February, 1900, the defend-
ants, as parties of the first part, entered into a written agreement
with the plaintiff, as party of the second part, reciting, among other
things, that:

"Whereas, the said parties of the first part are desirous of securing the
advice, knowledge, and experience of the said party of the second part, to-
gether with the use of his name, &c.: Now, therefore, this agreement wit-
nesseth that for and in consideration of the payment to the said party of
the second part, for the rest of his natural life, of the sum of six hundred
dollars per annum, payable in equal monthly installments of fifty dollars,
* * * the said party of the second part agrees to and with the said par-
ties of the first part to give his advice and to lend his skill and knowledge to
the said business so purchased by the parties of the first part, so far as the
same may be necessary or required to the benefit and advantage thereof."

On the 19th day of May, 1900, it is claimed that the defendants
discharged the plaintiff from their employ, although it does not ap-
pear from the contract or from the testimony that the plaintiff was
ever in the employ of the defendants in the sense that he could
be discharged from such employment, as he was only "to give his
advice and to lend his skill and knowledge * * * so far as the
same may be necessary or required"; and, unless he was called upon,
there was nothing for him to do under this contract, one of the con-
siderations of which was the use of plaintiff's name in the carrying
on of the business which the defendants had purchased from the Hero
Fruit-Jar Company, and which had been conducted by the plaintiff.
Subsequently, and on the 22d day of May, 1900, the plaintiff brought
an action against these defendants to recover for one month's com-
pensation under the contract, resulting in a judgment in his favor.
In July the plaintiff recovered another judgment for $50 under the
contract, and the testimony in the latter action was submitted to the
same court in the present action, resulting in the judgment appealed
from. On the second trial defendants' counsel moved to dismiss the
action on the ground that the first action was a bar to a recovery in
the second, but this motion was denied, and defendants did not ap-
peal. Defendants' counsel made a similar motion upon the trial of
the present action, which motion was likewise denied, and we are
asked on this appeal to hold that the plaintiff, having recovered dam-
ages for the breach of the contract against the defendants, cannot
sustain a second action upon the same contract for the same breach.
Without going to the length suggested by the plaintiff,—that this
question is, by the denial of the former motion and the acquiescence
of the defendants, res adjudicata, much support for which may be
found in Lorillard v. Clyde, 122 N. Y. 41, 25 N. E. 292, 19 Am. St.
Rep. 470,—we are of opinion that under the terms of the contract
between the parties a new cause of action arises at the expiration
of each and every month, and that the plaintiff has a right to recover
in the present action. Zimmerman v. Erhard, 83 N. Y. 74, 78, 38
Am. Rep. 396, and authorities there cited. It is a well-established
proposition of law that if a contract provides for payment by install-
ments, due at different times, the installments may, of course, be
successfully sued on as they become payable (Wells, Res Adj. 203);
but each action should include every installment due when it is com-

menced, unless a suit is at the time pending for the recovery thereof, or other special circumstances exist (Lorillard v. Clyde, supra).

But it is suggested that this question is res adjudicata as to the plaintiff, that the original recovery was for wages under the contract, that a second action was brought for damages for breach of the contract, and that the third action, being for a breach of the same contract, is barred by the former judgment. While it is not to be questioned that a former adjudication of the same question between the same parties for the same cause of action would constitute a bar to the present action, this rule, although a salutary one, is of a technical character, and a case must be brought strictly within it to give it effect. Secor v. Sturgis, 16 N. Y. 548, 560. This is a municipal court case, and in these courts the pleadings may be, and usually are, informal; and, with a view to substantial justice, courts of review have attached far more consequence to the conduct of the parties, and the proofs made by them upon the trial, than to their allegations. Campbell v. Butts, 3 N. Y. 173, 175; section 3063, Code Civ. Proc. The judgment now before us was rendered upon the evidence in the former trial, and the pleadings were oral and informal, the return of the learned justice reciting that:

"On the 8th day of August, 1900, the plaintiff appeared by John H. Webster, his attorney, and complained of the defendants for breach of contract, and that the defendants appeared by Darlington & Jenkins, their attorneys, and answered said complaint. Defendants pleaded that the judgment for services in the judgment of July 20th on the contract is a bar to all further recovery under the claim, which pleadings were filed, and the said action was thereupon adjourned to the 29th day of August, 1900. That on said 29th day of August, 1900, the parties again appeared in person and by their respective counsel, and proceeded to the trial of said action before me without a jury, and agreed that the action be submitted on the testimony taken on a previous trial of this cause on July 13, 1900, and briefs to be filed."

It will be observed that, while the justice says that the plaintiff complained of a breach of contract, the defendants do not plead that a judgment for a breach of the contract had already been rendered, but plead that the judgment for services in the judgment of July 20th on the contract was a bar, thus indicating that the defendants did not understand that there had been a judgment determining the ultimate rights of the plaintiff under the contract, but that the plaintiff had merely recovered for his services under the contract which were due at the time the action was commenced. The authorities are agreed that:

"Each default in the payment of money falling due upon a contract payable in installments may be the subject of an independent action, provided it is brought before the next installment becomes due, but each action should include every installment due when it is commenced." Lorillard v. Clyde, and authorities cited at page 45, 122 N. Y., page 293, 25 N. E., and page 471, 19 Am. St. Rep.

The only record now before us of the evidence in the present case is that found in the stenographer's minutes of the previous trial, in which the plaintiff was awarded $50 and costs, this being one month's installment of the money due under the contract; and it affords the only record as to the questions of law raised aside from the return of the justice already set out. In opening the case on the

13th of July (the present case coming to trial on the 29th of August), counsel for defendants asked the plaintiff's counsel to define the nature of the action brought by him,—whether it was for wages due, or whether it was for breach of contract. Plaintiff's counsel replied that it was for a breach of contract, but this language is not to be understood in the light of the evidence which followed; the trial proceeding upon the theory that the plaintiff was merely demanding the $50 due under the terms of the contract for one month; it being denied by the plaintiff that he was an employé, in the ordinary sense of that word, but that he was to give his advice, knowledge, etc., when called upon by the defendants; the purpose of the contract being to gain to the defendants the use of plaintiff's name in carrying on the business, as well as such experience, etc., as the latter possessed, whenever the defendants should call for the same. It appears from the evidence that the plaintiff, a man 75 years of age, had conducted the business of selling filters in the city of New York for a period of more than 18 years; that he had customers all over the United States; and that the business was known as the Seed Filter Company. Joseph H. Seed, the plaintiff, becoming embarrassed, sold the business conditionally to the Hero Fruit-Jar Company, to which he was indebted; and subsequently the latter company, with the consent of Mr. Seed, sold the property to the defendants; the contract set out above being entered into for the purpose of retaining to the business the good will, customers, etc., which had become attached to the establishment while under the ownership and control of the plaintiff. The plaintiff, on cross-examination, testified in reference to the matters in mind in entering into the contract:

"I had a half dozen things. I considered one of the most important things was independent of that,—being introduced with the trade, for one thing. Having thorough knowledge of the business, and the advice I could give being most trustworthy, was another."

He also testified that he had been paid all that was due him under the contract, except the amount for which he was suing, the previous judgment or judgments having been paid, and that the reason they agreed to pay him $50 per month was for the use of his name and advice. He is corroborated in this by one of the defendants, who testifies that "he was also to use his skill among the trade in trying to get them to buy goods of us, and he was to give his knowledge and information that we wanted in any way." The same witness, in response to the question, "Mr. Seed, under the agreement, gave you the use of his name?" answered, "Yes, sir"; and it subsequently appeared in evidence that the defendants used the name of the Joseph H. Seed Filter Company, and that they received and made use of the letters which came either to Mr. Seed personally or to the Seed Filter Company, and that these letters came in answer to advertisements in which the name of Mr. Seed was used. "We had the use of his name," says one of the defendants, "because it was established so many years. Now it is the Seed Filter Company, Johnston & Shinn, Proprietors."

It is evident from this that the contract was not merely one of employment, which could be terminated by the so-called discharge of

the plaintiff. It was a continuing contract for the use of the name of the plaintiff in carrying on a business which he had established; and a new cause of action arises at the end of each month, which cannot be defeated by the application of the rule of res adjudicata, under informal pleadings, in which the defendants have not raised the question. So far as the pleadings of the defendants are disclosed, they insist that the action is barred by a previous recovery for services. There is no suggestion on their part that the action was for a breach of the contract, in which the issue of its value to the plaintiff was or could be tried, but, construing the contract to be single and indivisible, they urge that a recovery of a part of the claim is a bar to all further recovery; and this, as we have already pointed out, is not supported by the facts as they appear in evidence, or by the law governing contracts of this character. The rule is stated in Reynolds v. Insurance Co., 160 N. Y. 635, 651, 55 N. E. 305, 310, that:

"The conclusive character of a judgment as a bar extends only to the identical issues which were tried in the former action. They must be the same in each action, not merely in name, but in fact and in substance; and the party seeking to avail himself of a former judgment as conclusive evidence or as a bar in a subsequent action must show affirmatively that the question involved in the second was material and determined in the former, as a former judgment would not operate as an estoppel in a subsequent action as to immaterial and unessential facts, even though put in issue and directly decided. It is final only as to facts litigated and decided which relate to the issue, and the determination of which was necessary to the determination of that issue."

See cases cited at page 652, 160 N. Y., and page 310, 55 N. E.

That the question of the damages suffered by the plaintiff, assuming the contract to have been repudiated on the part of the defendants, has never been in issue, is clear; both of the former actions having been instituted and prosecuted to judgment upon the theory that the contract was still in effect, and that the recovery was merely of an installment then due. At the close of the evidence in the second trial, which is the same as that now before us, defendants' counsel moved to dismiss the complaint on the ground that Seed had not fulfilled his contract. Counsel for plaintiff stated: "We sue for services from the 22d day of May to the 22d day of June." Counsel for defendants then moved to dismiss the complaint on the ground that the other action was a bar to this, and plaintiff's counsel responded, "The action is for breach of contract for the amount due from the 22d of May to the 22d of June." The justice reserved decision and decision on the motions, and subsequently rendered a decision for the plaintiff for the amount of one month's compensation under the contract. It is certain, therefore, that the only breach of the contract which has been before the court, either in the first, second, or third action, is the breach of the contract to pay the sum of $50 monthly. There has been a recognition of the contract as an existing instrument, controlling the relations between the parties, and the second action, like the present one, was merely for an installment then due. It was in the second case "for services from the 22d of May to the 22d of June," and in the present action it is for services from the 22d of June to the corresponding

day in July, and beyond this there has been no adjudication. The defendants are still making use of Mr. Seed's name in their business. They have had all of the advantages of a smooth transition of their business from the original ownership of the plaintiff to the present time, and it is hardly to be doubted that a court of equity would protect them in the use and enjoyment of the name and good will of Mr. Seed in its relation to the business of these defendants, under the terms of the contract, if the plaintiff should undertake to make use of it in another employment. The defendants have not shown affirmatively that any other issue has been tried or determined. The former judgment was not introduced in evidence, and is not in the record. The only evidence before us of a former trial is found in the stipulation in reference to the use of the evidence, and in the informal pleadings of the defendants that a former judgment for services was a bar to the present action. This is certainly an intangible foundation on which to apply the rule of res adjudicata; for it must be regarded as the established law of this state that a judgment is not conclusive in a second action unless the same question was at issue in the former suit of which the court had competent jurisdiction, and the subsequent action is between the same parties or their privies. Reynolds v. Insurance Co., supra. The controlling issue in the second action was whether the sum of $50 for the month between May 22d and June 22d was due, and had not been paid. That in the present action was whether a like sum was due and unpaid for the month between June 22d and July 22d. The rule is that in order to bar the second action the circumstances must be such that the plaintiff might have recovered in the first for the same cause alleged in the second. Jex v. Jacob, 19 Hun, 105, 110, citing Stowell v. Chamberlain, 60 N. Y. 272, 276; Hymes v. Estey, 116 N. Y. 501, 509, 22 N. E. 1087, 15 Am. St. Rep. 421. In Johnson v. Meeker, 96 N. Y. 93, 48 Am. Rep. 609, instructive upon the principle here involved, the court say (page 99, 96 N. Y.):

"We think the former recovery was no bar to the present action. The recovery in the former action was for six months' use of the barge, which was due at the time, and no recovery could have been had for the four installments which subsequently became due. As the claim in this action was not due at the time of the commencement of the former, it is not apparent how it can be barred thereby. The claim here is distinct and different from that for which the former recovery was obtained."

In Webb v. Buckelew, 82 N. Y. 555, 559, the court, after discussing the justification for making judgments conclusive evidence or a bar to further litigations between the same parties, say that "without such actual determination on the merits, evidenced by a record which cannot be contradicted, the reason of the rule does not apply, and the evidence ceases to be effective." In the case now before us the matter relied upon as res adjudicata is not evidenced by a record of any kind; and, as we have pointed out, the issues were different upon each trial, though arising under the same general contract. See Secor v. Sturgis, 16 N. Y. 548, 554, 558; Campbell v. Consalus, 25 N. Y. 613, 616, and authorities there cited; Griffin v. Railroad Co., 102 N. Y. 449, 452, 7 N. E. 735; House v.

Lockwood, 137 N. Y. 259, 269, 33 N. E. 554; Zimmerman v. Erhard, supra; Beach v. Crain, 2 N. Y. 86, 96, 49 Am. Dec. 369; Unglish v. Marvin, 128 N. Y. 380, 386, 28 N. E. 634. In Beach v. Crain, the court say:

"But the evidence in both actions may be in part the same, yet the subject-matter essentially different, and in such case there is no bar. For example, if money be awarded to be paid at different times, assumpsit will lie on the award for each sum as it becomes due. So, on an agreement to pay a sum of money by installments, an action will lie to recover each installment as it becomes due. * * * Yet in each of these examples the evidence to support the different actions is in part the same."

See Dutch Church v. Brown, 54 Barb. 191, 199.

It seems clear, then, that the plaintiff, under all of the authorities, has a right of action for each month's compensation under his contract as it falls due; that a judgment in one action is not a bar to a subsequent action for the same amount due for another period; and that, without the record showing that all of the issues which might have been tried have been disposed of, there can be no application of the rule of res adjudicata. It is for the defendants to show that an issue involving the value of the contract to the plaintiff has been tendered and tried before they can invoke this rule, and this fact must be shown by the record, and must not be left to be gathered from inferences based upon no better facts than are now before us. The judgment appealed from should be affirmed, with costs.

GOODRICH, P. J., and SEWELL, J., concur. JENKS, J., concurs in result.

HIRSCHBERG, J. (dissenting). I would have little if any difficulty in agreeing with the majority of the court as to the proper disposition of this appeal, were the question of res adjudicata the only serious one presented. But there is another question on the merits to be considered, not touched upon in the prevailing opinion, the facts in relation to which are undisputed, and which has the effect not only of rendering the plaintiff's judgment unfounded and unjust, but of multiplying similarly unfounded and unjust judgments in his behalf indefinitely in the future. The written contract between the parties was executed on or about February 1, 1900. Under it the plaintiff went to work for the defendants, devoting himself chiefly to the task of filling the filters. On the 19th of May he refused to work any longer, and was discharged. Since then he has not worked at all for the defendants, nor sought work elsewhere. He brought suit, and recovered and received the wages due him at the time of his discharge. He then sued again, and again recovered, and that judgment has also been paid. The record does not disclose the pleadings in the second suit; but at the commencement of that trial the defendants' attorney said, "I would like to have my friend define the nature of the action brought by him,— whether it is for wages due, or whether it is for breach of contract;" to which the plaintiff's attorney replied, "The action is for breach of contract." On this (the third) trial the complaint is also for

breach of contract, in express terms; but, for the reasons set forth in the opinion of Mr. Justice WOODWARD, it is easy, and perhaps just, to assume that the parties did not attach to the expression the precise and technical significance which would prevail in a court of record, but referred only to a claim for the recovery of a monthly installment under the terms of the contract. It is especially easy for those of the court who took no part in deciding Waldron v. Hendrickson, 40 App. Div. 7, 57 N. Y. Supp. 561, and Wieland v. Willcox, 40 App. Div. 213, 57 N. Y. Supp. 1038, to adopt that view. The contract, however, is entire, and the plaintiff cannot lawfully recover except upon proof of full and complete performance. The executory portion of the agreement is as follows:

"That for and in consideration of the payment to the said party of the second part for the rest of his natural life of the sum of six hundred dollars per annum, payable in equal monthly installments of fifty dollars, payable on the ———— day of each and every month, the said party of the second part agrees to and with the said parties of the first part to give his advice and to lend his skill and knowledge to the said business so purchased by the parties of the first part, so far as the same may be necessary or required to the benefit and advantage thereof."

The defendants did not purchase the business from the plaintiff, but purchased it from his grantee, the Hero Fruit-Jar Company; and while it is true that the plaintiff's name is used in the business, and the contract, among its recitals, mentions the defendants' desire to use the name, that right is not conferred by the agreement. All, therefore, which the plaintiff expressly agrees to do for $600 a year, is "to give him advice and lend his skill and knowledge" to the business. That both parties contemplated that the plaintiff would work as he actually did work from the time the agreement was executed until he ceased and refused to work, viz. at filling the filters, is beyond doubt or question. The defendant Johnston testified as follows:

"Q. What was this plaintiff expected to do in your business, in regard to skill, knowledge, and advice? A. Skill, as I understood, and as I believe that Seed understood it,—what we both understood,—that it required skill to fill these filters; and he claimed that he was the most skilled man in America, and he boasted that he was, and in fact he was skilled; and so that was one thing that Seed was to handle,—was to fill these filters."

The plaintiff himself testified as follows:

"Q. What did you make the contract for? A. There was experience required. Q. Your experience? A. Yes, sir. Q. What is the experience? A. Quickness. Q. Quickness in doing what? A. In filling the filters. Q. Then it requires some experience or skill in the filling of the filters? A. Yes, sir. * * * Q. What did you mean by the word 'skill' when you signed that contract? What did you understand that word to mean? A. Experience. Q. What experience is required in that particular business? A. Skill. Q. In what particular? A. Filling them quickly. Q. Have you ever refused to fill the filters? A. Never, only on one occasion. That was the last day I was with them. I couldn't stay any longer. I was doing more than I had any occasion to do. I was sick and ill, and left at three o'clock in the afternoon."

The parties differ as to whether or not the plaintiff was discharged when he refused any longer to fill the filters on the day in question. The defendants say he was discharged, and he denies it.

But he never went back again,—never filled a filter after May 19, 1900; and the judgment which he has recovered is based on the theory that he is under no obligation to work for the defendants, or to do or offer to do anything in or about their business, but is entitled, without such work or offer, to receive from them an annuity of $600 a year for the rest of his natural life. Manifestly, the matter of "advice" between parties who are at law with each other monthly is intangible and valueless as a business asset. But the practical physical aid which the plaintiff contracted to render to the defendants' business as a result of his skill and experience appears to have been regarded by both parties as the chief consideration for the defendants' promise to pay; but, even were it a minor consideration, so long as it was substantial, and fairly did enter into the reasons which prompted the promise of a large life annuity, when the plaintiff refused to furnish this aid the contract was broken, and the defendants' obligation to pay ceased. If the discharge was without just cause, the plaintiff would be entitled to damages, to be recovered in a single action. But I know of no principle of law which permits him to recover the monthly stipend for services which he refuses to render. He apparently realizes the weakness of his position, inasmuch as he offers feeble excuses for his failure to carry out the contract. In one breath he says he did what he did in filling the filters not under the obligations of the contract, but "out of love for them,"—the defendants. In the next breath he says the reason why he no longer does this work for the defendants is because they do not ask him to do it every day. He testified (referring to the date of the alleged discharge):

"Q. Why didn't you go after that time? A. They declined paying me for what I had done. Q. And told you they didn't want you? A. No, sir. Q. Yet you say you were ready and willing to perform your contract? A. Yes, sir. Q. Why didn't you go there the following Monday? A. Because they didn't ask me. Q. Did they ask you every day to go there? A. No, sir. Q. And from that time you have not been there, except to make a demand for your money? A. No, sir; I would have gone every day if they asked me, but I have no occasion to go at all."

The conclusion that the work which the plaintiff actually did until May 19, 1900, was purely voluntary, is wholly inconsistent with his testimony that he made the contract because his skill and experience in filling the filters quickly was required in the business, and that by the word "skill" in the contract he meant to confer the promise of that facility. If it be true that he was "sick and ill" on the 19th of May, as he says, and therefore quit work at 3 o'clock in the afternoon, he should have gone back, or at least offered to go back, when he felt better. The defendants' promise to pay this large annual sum to the plaintiff for life should not be treated as a gratuity, for which the plaintiff should be required to do nothing except to bring a monthly lawsuit. The practical construction which the plaintiff's conduct placed upon the contract should be given due weight, especially in view of the testimony on both sides that it was in accord with the understanding of both; and the judgment should be reversed, in the interest of justice and fair dealing.