BRANTINGHAM v. HUFF et al.

(Supreme Court, Appellate Division, Second Department. December 23, 1901.)

1. SPECIFIC PERFORMANCE—CONTRACT TO BEQUEATH PROPERTY—OWNERSHIP—SOURCE—EVIDENCE—SUFFICIENCY.

An interlocutory judgment directed an executrix and residuary legatee to surrender to plaintiff all property received from testator in his lifetime or under his will, and appointed a referee to take proof as to what property should be so surrendered. The executrix claimed that certain stock was not received from testator. The corporation stock ledger showed that the stock was issued to testator four years before testator and his executrix ever met, and remained in his name for nearly four years after the time when she now claimed that she had been the owner

of it, and that it was then transferred to her by testator's indorsement. *Held*, that the evidence supported the referee's finding that it was derived from testator, and should be surrendered.

**2.** APPEAL — RECORD — LENGTH — EXCEPTIONS—NUMBER—POSSIBLE VALIDITY— DISPOSITION.

An interlocutory judgment established plaintiff's right to a surrender of all property derived by defendant from testator in his lifetime or under his will, and appointed a referee to determine what property should be so surrendered. The reference covered much ground, and was sharply contested, defendant taking exceptions to almost every question and ruling. *Held* that, while incompetent or immaterial evidence might have been admitted on some point, yet as defendant's course seemed based on the hope of postponing the ultimate surrender, rather than of bringing out the truth, the court would not be sedulous in a search for a possible valid exception, but would leave defendant to apply for relief at the foot of the final judgment in case injustice had been done as to any particular item.

Appeal from special term, Richmond county.

Action by May Thorne Brantingham against Eunice E. Huff individually and as executrix of Joseph Thorne, deceased, and others. From a final judgment of the special term of the supreme court in favor of plaintiff, defendant Huff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, HIRSCHBERG, and SEWELL, JJ.

William C. Beecher, for appellant.

Alex. Thain (Burton Thompson Beach, on the brief), for respondent.

HIRSCHBERG, J. The action is brought to compel the specific performance of a contract by which the testator, Joseph Thorne, agreed to give the plaintiff all his property; the contract having been entered into on the occasion of the adoption of the plaintiff by him and his wife during the plaintiff's infancy. The defendants are the representatives of the estate, legatees and devisees, and grantees to whom the deceased transferred portions of his property during life, unduly influenced to do so, as the plaintiff alleges. On appeal from the judgment in favor of the defendants dismissing the complaint upon the merits at the first trial, the judgment was reversed, this court holding that the action could be maintained. See Brantingham v. Huff, 43 App. Div. 414, 60 N. Y. Supp. 157. The principle has twice since been affirmed by the court of appeals, viz. in Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, and in Healy v. Healy, 166 N. Y. 624, 60 N. E. 1112, affirming 55 App. Div. 315, 66 N. Y. Supp. 927. On the second trial of this case it was decided at the special term that the plaintiff was entitled to the relief demanded in the complaint as against the defendant Eunice Ellinor Huff, but that the remaining individual defendants were entitled to judgment dismissing the complaint upon the merits. Both sides appealed from the interlocutory judgment entered upon that decision, but the judgment was affirmed. See Brantingham v. Huff, 60 App. Div. 632, 70 N. Y. Supp. 1135. The present appeal is taken by the defendant Eunice Ellenor Huff from the final judgment entered upon the coming in of the report of a referee appointed for the purpose, among other things, of taking

and reporting testimony pursuant to the provisions of the interlocutory judgment. The appellant filed certain exceptions to the referee's report, which were overruled, and the report confirmed; but no exceptions were taken or filed to the action of the court, or to the final judgment appealed from. By the terms of the interlocutory judgment the appellant was required to forthwith assign, transfer, deliver, and set over to the plaintiff all the personal property, securities, and money received or acquired by her from or through the deceased in his lifetime, or which have come into her possession under his will or otherwise, in whatever form such property may be, especially including 500 shares of the capital stock of the American Press Association, standing in her name on the books of the corporation at the time of the trial. She was also required to convey to the plaintiff certain premises and real estate on Staten Island, and the premises known as No. 89 Highland avenue, in the village of Sing Sing, N. Y., should it appear upon the reference that the deceased paid the consideration at the time the title to such real property was acquired by her. The powers and duties of the referee are declared in the decree to be to supervise the conveyances and transfers so directed to be made; to take proof and report in respect to any other property acquired by the appellant, and transferred to her voluntarily and without consideration by the deceased, or paid for by him, and the title taken in her name, and also to take proof and report by whom the consideration for the Staten Island and Sing Sing properties was in fact paid; to ascertain and report what disposition the appellant has made of property so acquired by her from the deceased, or of the proceeds thereof; and also to ascertain and report what income has been received by her since the death of Mr. Thorne from properties so acquired by her and paid for by him. It may well be doubted whether any question is presented to the court for review under exception taken to the action of a referee not empowered to finally determine anything, but acting as an amanuensis for the convenience of the court, by whom all questions were finally determined, and to whose determinations no exception has been taken. See Doremus v. Doremus, 76 Hun, 337, 27 N. Y. Supp. 1039. Resolving whatever doubt exists in favor of the appellant, I have examined the record now presented with that presented on the appeal from the interlocutory judgment, and which together constitute the entire record of the trial at the special term, for the purpose of ascertaining whether such errors in rulings as would seem to be inevitable on a protracted reference, embracing thousands of folios of proof, covering minute matters of account, and with an objection interposed to nearly every question, are of sufficient gravity in themselves, or so far prejudicial to the substantial rights of the parties, as to require a reversal in the interest of justice, and have reached the conclusion that the judgment should be permitted to stand. This conclusion is based, to some extent, upon the conviction that the appellant is and has been possessed of no considerable property but such as she has acquired in some way from Mr. Thorne. He was an old and very wealthy man, while there is no reliable evidence to indicate that the appellant was ever possessed of any considerable means. She

first met him in October, 1892, in a railroad depot at Boston, whence she came with him to New York. She was then living with her husband in a small flat in New York, her husband being a floorwalker in a dry goods store, and afterwards employed at a salary of $18 a week as a clerk in one of the large department stores. This seems to be the only proof of earnings on their behalf, while the moderate nature of their income is attested, to some extent at least, by the fact that they, or one of them, secured by chattel mortgage the purchase price of $100 worth of furniture purchased on the installment plan. Nevertheless, according to her own admission, she did receive from Mr. Thorne, from time to time, property of great value. The purchase of the real estate in question was unquestionably negotiated by him, and paid for with his checks. She so far ingratiated herself in his confidence and affection as to secure admission to his house as an inmate, driving his aged wife and the plaintiff, their adopted daughter, from their home, and resulting in the bringing of two actions by the wife,—one against him for divorce, and one against the appellant for alienation of affections,—both of which actions were subsequently compromised. She finally procured from him for a nominal consideration a bill of sale of every article of personal property which he possessed, and a few days before he died he executed a will in which she was named as executrix and sole residuary legatee. On the hearing before the referee the appellant never appeared. For the purpose of proving the fact that she was possessed of abundant means prior to her acquaintance with the deceased, in aid of the claim that some of the property in question was or might have been obtained by her individual resources, she caused some relatives and friends to be examined as witnesses, and they testified that money was given to her by others on certain occasions, and that she gave such money to Mr. Thorne. These stories have been rejected by the court at special term, and I can but concur in that view of their credibility. As a sample of the nature of this testimony, a single instance must suffice. Her brother-in-law testified that she had placed in his possession the sum of $2,000 for investment. Instead of investing it, he kept it in his safe in Boston a year and a half, in bills, in the original package, unbroken, wrapped in brown paper, and sealed with mucilage. In February, 1893, he brought the package to New York, and returned it to the appellant at her written request (letter not produced), and remained in her flat long enough to see her hand the package to Mr. Thorne, and to tell him that it was for the payment of the Staten Island property, or, to use her exact words, "payment of the property that you have been transacting the business for me." This money was never counted by the witness, and he has only the appellant's statement for the fact of the amount. It was never, during the 18 months of its retirement, the subject of conversation or correspondence; while as to the reason why it was kept uninvested only this incidental light appears in the casual conversation accompanying its return:

"I handed this money over to her, and said: 'This is what you have wrote me for. I have it. I couldn't invest it in anything that would be satis-. factory. That's what you want of me.' She said to me then: 'I am glad

you got here as soon as you have, because I wanted that; because I have a place to place a payment on a house at Staten Island.'"

The other transactions referred to were also cash transactions, loans and payment by currency, never by check, and are of the character which precludes an appellate tribunal from reversing a judgment merely because they unsuccessfully challenged the credulity of the trial court. But, aside from considerations influenced by the belief that the appellant had nothing but what she received from the deceased, the legitimate evidence seems sufficient in every instance to support the findings. In reaching this conclusion I assume the findings and interlocutory judgment as affirmed by this court and the evidence then given to be entitled to full faith and credence. For example, the learned counsel for the appellant insists that, while it was proper to charge her with 500 shares of the capital stock of the American Press Association, because she is to that extent precluded on this appeal by the finding of the interlocutory decree, it was error to charge her with over 1,000 additional shares merely because they had been at some time received by her. But there is not the slightest question that they all came from the deceased. The appellant was required to file an account with the referee, and she did so. In this account she states that she had 500 shares of this stock in November, 1892, represented by certificate No. 3, which she subsequently surrendered, and received, on reorganization, certificate No. 193, for double the shares, viz. 1,000. This, she says, was her property, and never Mr. Thorne's. The stock ledger of the association, however, and other evidence in the case, shows that all this stock, amounting to 1,510 shares, was and remained in the name of Mr. Thorne until May 8, 1896, when the shares were surrendered by him, and certificates for a like number of shares were issued to the·appellant, who then for the first time became a shareholder on the books of the company. Moreover, the record on the original trial, which resulted in the interlocutory judgment, and which is available on this appeal, shows that certificate No. 3 for the 500 shares was issued to Mr. Thorne on October 30, 1888,—four years before he became acquainted with the appellant; that it was transferred to her by his indorsement; and that the 1,510 shares issued to her on May 8, 1896, was a reissue of the precise stock which he surrendered and had canceled on ·that day. It would be profitless, as well as wearisome, to analyze in detail the countless objections and exceptions to the referee's rulings and findings presented by the appellant. In his original· decision, after finding in support of the agreement by which, for an adequate consideration, Mr. Thorne engaged to devise and bequeath all his property to the plaintiff, the learned trial justice, Mr. Justice Wilmot M. Smith, found "that the defendant Eunice Ellinor Huff, between the years 1892 and 1897, with the knowledge of the aforesaid agreement, and with intent to defraud the plaintiff of all her interest therein, and of the benefit thereof, and by the use of undue influence fraudulently exerted, procured the said Joseph Thorne in his lifetime to transfer and deliver over to her without consideration all his personal··property, and also ·to purchase and

pay for the two parcels of real estate above mentioned, taking the title thereto in her own name; and that this was done by the said Eunice Ellinor Huff fraudulently, and with the intent that no portion of the real or personal property last mentioned should come to the plaintiff, under or by virtue of the aforesaid agreement, at the death of said Joseph Thorne, or at any other time." These findings have been unanimously approved by this court, and the reference was a lawful attempt to undo, so far as may be, the wrong accomplished by the fraud. With no aid from the appellant, it was incumbent upon the plaintiff to establish as best she could the extent of the fraud, and the amount and value of the property of which the deceased has been despoiled. Some of the evidence adduced in the inquiry under such circumstances may well have been incompetent or immaterial, but it is impossible to read the case without the suspicion that a possible good exception was relied upon to protract the period of judicial investigation, and to delay the ultimate demands of justice, rather than to exhibit the merits of the controversy; and if the appellant has thereby been overcharged in any item, which is not apparent, but of which she may have independent knowledge, it would be better that she apply for relief at the foot of the judgment, for which provision is made, than for this court to be sedulous in a search for technical defects not affecting substantial results, and to make them the basis for granting a new trial.

The judgment should be affirmed.

Judgment affirmed, with costs. All concur.