JAMES P. BARRETT, Plaintiff, *v.* FRANCES B. MINER and EVELYN M. PURVEE, Individually and as Administratrix of the Goods, Chattels and Credits of SARAH BARRETT, Deceased, Defendants.

*Supreme Court, Steuben Equity Term, August, 1922.*

Contract — decedent's estate — agreement that plaintiff should be considered as a son and be entitled to all the rights of such relationship as heir at law and next of kin will be enforced in equity against the estate of the decedent who died intestate — when decree of Surrogate's Court awarding letters of administration on the estate is not res adjudicata.

There is no distinction between an agreement to will one's property to an individual and a promise that the same individual shall be considered as a lawful heir and one of the next of kin of the obligor.

Where a contract to leave property by will has been clearly established, performance on the part of the promisee is shown, and the contract is free from all objections rendering the claim inequitable, specific performance will be decreed.

A written contract under seal provided that plaintiff, then of full age, should sustain towards each of the parties of the first part, with whom plaintiff had lived since he was three years old, the relation of a son and be entitled to all the rights and benefits of such relationship, and upon the death of each of the parties of the first part should be considered and treated as a lawful heir and one of the next of kin of each of said parties to the same extent and in the same manner as though he was the lawful issue of the marriage of the parties of the first part. The plaintiff agreed to treat the parties of the first part as his lawful parents and give them all the rights, privileges and benefits of such relationship. The consideration stated in the contract was love and affection, one dollar and the mutual covenant and agreement of the parties, but no money consideration ever passed. The husband devised all his property to plaintiff, subject to the life use of the same by his wife, who died intestate. *Held,* that the contract was bilateral and full performance thereof on the part of plaintiff was a good and valuable consideration for the promise of the other parties.

No proceedings were ever taken to legally adopt the plaintiff. Upon the death of the wife plaintiff brought an action for specific performance of the contract against one who about ten years prior to the making of said contract had been legally adopted as the daughter of the parties of the first part to the contract with plaintiff. *Held,* that on the merits plaintiff was entitled to a decree of specific performance.

While the contract did not bring about the legal adoption of plaintiff so as to enable him to inherit the property of the parties of the first part, it should be construed as an agreement to make a particular disposition of property at death for the benefit of plaintiff, and will be enforced in equity against those to whom the legal title to the property has descended.

After letters of administration upon the estate of the wife had been issued to her sister the plaintiff made application to have letters issued to him, and the legally adopted daughter instituted like proceedings to have letters issued to her. *Held,* that a decree revoking the letters issued to the sister and ordering that letters issue to the legally adopted daughter, who by virtue of section 118 of the Surrogate's Court Act was entitled thereto, though purporting to decide that the legally adopted daughter was entitled to administer the estate, was silent as to who was entitled to the property of the decedent, a question not before the court, was not *res adjudicata* and plaintiff was not estopped from enforcing the contract by reason of the facts adjudicated by said decree.

ACTION for specific performance of contract.

*Floyd W. Annabel,* for plaintiff.

*Wilbur F. Knapp,* for defendants.

EDGCOMB, J. When the plaintiff, whose real name is Bibby, was three years of age he came to live with Patrick and Sarah Barrett. He was related to Mrs. Barrett, and she cared for him as she would her own son. He took their name, and was known as the " Barrett boy." When he became nineteen plaintiff went to a business school in Corning, Patrick paying for his education.

Plaintiff spent his vacation and week ends on the farm, helping with the work. Later he married, and went elsewhere to live, but visited the old home frequently, taking with him on many

occasions his wife and children. Patrick was ill for three years before he died, and plaintiff went to see him nearly every Saturday, and looked after his comfort as a dutiful son would have done. When Patrick died plaintiff made all arrangements for the funeral and took the burden which is usually assumed by those nearest to the deceased. Mrs. Barrett remained on the farm after the death of her husband until the following April when she went to Bath to live. During all this time plaintiff was a constant visitor at her home, and her trusted adviser; on her death he took entire charge of the funeral arrangements. No proceedings were ever taken to legally adopt the plaintiff, but the greatest love and affection existed between him and the old, childless couple. Plaintiff looked upon Patrick and Sarah as the only parents he ever knew, and they looked upon him as their own flesh and blood.

In 1902 the defendant Evelyn M. Purvee was legally adopted by the elder Barretts, and she lived with them until she ran away to get married, since which time she has resided elsewhere.

In January, 1911, after the plaintiff had attained his majority, he and the elder Barretts entered into a written contract which is the subject of this litigation. The important part of that instrument, so far as this case is concerned, is the agreement on the part of the first parties (Patrick and Sarah Barrett) " that the said party of the second part [plaintiff] shall be in all respects treated and considered the son of the parties of the first part, and each of them, and shall sustain towards them and each of them the relation of a son, and entitled to all the rights and benefits of such relationship, and at the death of each of the parties of the first part shall be considered and treated as a lawful heir and one of the next of kin of each of said parties of the first part, to the same extent and in the same manner as though the party of the second part was the lawful issue of the marriage of the parties of the first part." The plaintiff on his part agreed to treat the elder Barretts as his lawful parents, and to give to them all the rights, privileges and benefits of such relationship.

The contract was under seal. It recites that the foster parents took the plaintiff into their home when he was three years of age, and brought him up as their adopted son, and that, although the plaintiff had never been legally adopted, both Mr. and Mrs. Barrett were anxious of establishing, so far as they were able, the relation of parent and child, and of making the plaintiff their legal heir, to the same extent as if he was their lawful son. The consideration stated in the instrument was love and affection, one dollar, and the mutual covenants and agreements of the parties. No money consideration ever passed between the parties.

Patrick devised all his property to the plaintiff, subject to the life use of the same by his wife. Sarah died intestate. Mrs. Purvee claims to be the only heir at law and next of kin of her foster mother. This action is brought to have the court decree specific performance of the above contract.

No question is raised as to the competency of the parties to make this contract, or as to its execution and delivery. There is no suggestion of fraud or duress. The parties met on equal terms.

Mrs. Purvee, individually and as administratrix of Mrs. Barrett's estate, defends, and opposes specific performance of this contract upon the following grounds: (1) That the contract is one for the adoption of James Barrett, and as such is illegal; (2) that there was no consideration for the agreement; (3) that the contract is of such a nature that the court should not exercise its discretion and decree specific performance; (4) that a prior decree of the Surrogate's Court of Steuben county is *res judicata,* and disposes of this controversy adversely to the plaintiff.

Defendant seeks to construe this contract as one for the adoption of the plaintiff, and insists that his right to share in decedent's property rests entirely upon the theory that he was the legally adopted son of decedent, and he can only take by virtue of the Statute of Descent and Distribution. If plaintiff's right to recover rested upon such theory, I would dismiss this complaint. The legal adoption of a child can only be accomplished by virtue of the statute. *Carpenter* v. *Buffalo General Electric Co.,* 213 N. Y. 101; *United States Trust Co.* v. *Hoyt,* 150 App. Div. 621. No proceedings were ever taken pursuant to the provisions of the Domestic Relations Law. At the date of this contract plaintiff had passed his majority, and the statute as it then stood did not provide for the adoption of an adult.

I think, however, that the defendant misapprehends the nature and purport of this instrument. While it did not bring about the legal adoption of the plaintiff so as to enable him under the statute to inherit the property of the elder Barretts, I think that it should be construed as an agreement to make a particular disposition of property at death for the benefit of the plaintiff. If that is the purport of the contract judicial opinion seems almost unanimous that it will be enforced in equity against those to whom the legal title to the property has descended. *Middleworth* v. *Ordway,* 191 N. Y. 404; *Godine* v. *Kidd,* 64 Hun, 585; *Brantingham* v. *Huff,* 43 App. Div. 414; *Heath* v. *Heath,* 18 Misc. Rep. 521; *Gates* v. *Gates,* 34 App. Div. 608; *Winne* v. *Winne,* 166 N. Y. 263; *Parsell* v. *Stryker,* 41 id. 480; *Phalen* v. *United States Trust Co.,* 186 id. 178;

*Healy* v. *Healy,* 55 App. Div. 315; affd., 166 N. Y. 624; *Ga Nun* v. *Palmer,* 216 id. 603; *Morgan* v. *Sanborn,* 225 id. 454; *Seaver* v. *Ransom,* 224 id. 233; *Bouton* v. *Welch,* 48 App. Div. 378; *Burns* v. *Smith,* 21 Mont. 251; *Pemberton* v. *Heirs of Pemberton,* 76 Neb. 669; *Kofka* v. *Rosicky,* 41 id. 328.

The well-established principle applicable in cases like the present is concisely stated in *Winne* v. *Winne, supra,* as follows: " It is undoubtedly the settled law of this State that where a certain and definite contract is clearly established, even though it involves an agreement to leave property by will, and it has been performed on the part of the promisee, equity, in a case free from all objections on account of the adequacy of the consideration or other circumstances rendering the claim inequitable, will compel a specific performance."

In *Godine* v. *Kidd, supra,* a mother surrendered her daughter to a childless couple upon their agreement to bring up the child, give her their name, make her their heir, and give her what property they might have at their death, if she survived them. The contract was made before 1873, when the first statute was passed in this state authorizing the adoption of children who were not the offspring of the parents. The contract was fully performed by the defendant so far as any obligation was imposed upon her. The husband left all his property to the defendant, but his wife died intestate. Held, that specific performance of the agreement should be decreed, and that defendant was entitled under the agreement to take the property of which the wife died seized.

In *Brantingham* v. *Huff, supra,* decedent and his wife agreed to adopt the plaintiff, and upon their death to give her all their property. The judgment dismissing the complaint was reversed, and it was held that the plaintiff was entitled to a specific performance of the contract against the devisees and grantees of decedent. Upon a retrial specific performance of the agreement was decreed. This judgment was affirmed by the Appellate Division (67 App. Div. 621), but reversed by the Court of Appeals (174 N. Y. 53) upon the ground of an error in the admission of evidence tending to enlarge or vary the contract. The first decision of the Appellate Division (43 App. Div. 414) was not reversed or questioned. In fact that decision is cited with approval by the Court of Appeals in *Winne* v. *Winne, supra.*

In *Burns* v. *Smith, Pemberton* v. *Heirs of Pemberton,* and *Kofka* v. *Rosicky, supra,* it was held that, although an instrument was invalid as a contract of adoption, it might still be valid as a contract to make a certain testamentary provision.

Many of the cases above cited involve an agreement to leave

property by will, and it has uniformly been held that, when the contract has been performed and is free from all objections rendering the claim inequitable, equity will decree specific performance. I can see no distinction between an agreement to will certain of one's property to an individual, and a promise that the same individual shall be considered as a lawful heir and one of the next of kin of the obligor. The effect is the same.

The contract in question possesses all the requisites which the courts say are necessary to warrant its enforcement. Its execution is conceded. It has been reduced to writing, and, therefore, its terms are definite and certain. The promise to treat plaintiff as the lawful heir and next of kin of decedent does not render its provisions too uncertain to deny plaintiff his rights thereunder, as urged by defendant. *Gates* v. *Gates, supra.* It is not tainted with fraud, duress or misrepresentation. It is mutual in its obligation and remedy. It is fair, reasonable, equal and just. It is not harsh or oppressive. The mere fact that if plaintiff is successful Mrs. Purvee will be deprived of plaintiff's portion of the estate, to which she would otherwise be entitled, does not prevent the enforcement of the contract on the ground that it will result in injustice to third parties. *Godine* v. *Kidd, supra.* The agreement is founded on a valuable consideration.

Defendant especially challenges this last statement. She urges that the instrument shows that the controlling cause which induced decedent to execute it was the past relationship which had existed between the parties. She insists that there was no valuable or present consideration for the contract. Undoubtedly that would be necessary for plaintiff's success. *Dempsey* v. *McKenna*, 18 App. Div. 200. I think, however, that when this agreement was executed there was not only a present but also a valuable consideration passing to the elder Barretts. While this close relationship between the parties had existed for years, it had been voluntary on the part of each, and there was no legal obligation on the part of either to continue it, or to perform any services for the other.

The gist of the contract is a mutual covenant on the part of each to do certain things in the future for each other. This is a bilateral contract. The promises of the parties were mutual. The rule is well established that under such circumstances the promise of one is a sufficient consideration for the binding declaration of the other. *McDonnel* v. *Elias Brewing Co.*, 16 App. Div. 223; *Veerhoff* v. *Miller*, 30 id. 355; *Electric Fireproofing Co.* v. *Smith*, 113 id. 615; *Bracco* v. *Tighe*, 75 Hun, 140; *Briggs* v. *Tillotson*, 8 Johns. 304; *Norris* v. *Tiffany*, 6 Misc. Rep. 380. Especially ought this rule to be enforced when one of the parties has per-

formed on his part all of the obligations imposed upon him. Such performance constitutes a good and valuable consideration for the promise of the other party, and entitles the party performing, unless some other unsurmountable obstacle exists, to equitable assistance. This would be so even if there was no binding obligation on the part of the plaintiff. Consideration assumes its strongest form when executed. *Godine* v. *Kidd, supra; Middleworth* v. *Ordway, supra; Grossman* v. *Schenker,* 206 N. Y. 466, 468; *Ga Nun* v. *Palmer, supra.*

While undoubtedly mere love and affection would not be a sufficient consideration to support an executory contract so as to warrant a decree for specific performance, in the instant case the contract, so far as plaintiff is concerned, has become executed, and is not now executory.

Whether plaintiff would be overpaid if this contract were enforced is not in question here. Mere inadequacy of consideration or a substantial difference in value between the consideration paid and the services performed will not defeat a decree of specific performance. *Godine* v. *Kidd, supra; Ga Nun* v. *Palmer, supra; Viele* v. *Troy & Boston R. R. Co.,* 21 Barb. 381; *Northrup* v. *Gibbs,* 1 N. Y. Supp. 465. It is impossible for the court to say how much plaintiff's services were worth to the defendant's intestate. They may have been worth many times the value of her estate. " The adequacy of the consideration is for the parties to consider at the time of making the agreement; not for the court, when it is sought to be enforced." Leake Cont. 613.

If I am right in the above conclusions this is a contract which a court of equity may enforce. That brings us to the third objection of the defendant, viz., that the facts are such that a court of equity should not exercise its discretion and decree specific performance. Even if a contract belongs to a class where the right to decree specific performance exists, that right is not absolute, but rather is addressed in the first instance to the sound, judicial discretion of the court whose aid is invoked. *Sherman* v. *Wright,* 49 N. Y. 227; *Conger* v. *N. Y., W. S. & B. R. R. Co.,* 120 N. Y. 29; *Winne* v. *Winne, supra.*

The word " discretionary," as used in the decisions, is somewhat inaccurate and misleading. The right to decree specific performance is governed by the same general rules which control the administration of all other equitable actions. The discretion referred to does not mean a whimsical, fickle or arbitrary one, but rather the sound, judicial discretion of the court, controlled by established principles of equity, and exercised upon a consideration of all the facts and circumstances of the case. The rule is stated by Judge Story in his Commentaries on Equity Jurisprudence (14th ed.),

in section 1027, as follows: " The discretion with which the chancellor is vested is a legal, and not arbitrary discretion. He may only exercise his discretion and deny the relief when the facts are doubtful, or the contract or some of its terms are so uncertain that injustice might arise."

Pomeroy, in section 1404 of his work on Equity Jurisprudence (4th ed.), states the rule as follows: " Where, however, the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach."

I think that this contract fulfills the specifications above set forth, and should, therefore, be enforced. If, however, I were free to act according to my own judgment I should reach the same conclusion. Deceased voluntarily entered into this agreement; she accepted the benefits arising therefrom; she had a right to do what she deemed best with her property. She is not asking to be relieved from the obligations which she assumed; she never sought to repudiate the agreement. The objection to its enforcement comes from one who was not a party to the agreement, but who would benefit if its terms were not enforced. Why should a third person for reasons of her own be permitted to produce a result which was not contemplated by the parties at the time of the execution of the contract? I believe that when a party deliberately enters into an agreement, immune from criticism and free from defects, he and his representatives should live up to it, or else be made to do so. The court should not substitute its judgment for that of the parties. I think, therefore, that on the merits plaintiff is entitled to a specific performance of the contract.

It remains only to consider whether the plaintiff is estopped from enforcing this contract by reason of the facts which were adjudicated by the decree of the Surrogate's Court of Steuben county. Soon after the death of Sarah Barrett letters of administration upon her estate were issued to her sister, Frances B. Miner. Thereafter plaintiff made an application to have letters issued to him, and the defendant Purvee instituted like proceedings to have letters issued to her. This procedure resulted in a decree revoking the letters issued to Mrs. Miner, and ordering that letters issue to the defendant Purvee. The surrogate had this contract before him, but only for the purpose of determining whether such a relationship existed between the plaintiff and decedent as entitled the former to administer the latter's estate. Otherwise the court would have had nothing to decide, and the controversy would have been

meaningless. The surrogate had no jurisdiction to refuse to issue letters to Mrs. Purvee, who was entitled thereto by virtue of the provisions of section 118 of the Surrogate's Court Act, on account of this agreement, or to decree its specific performance. *Heath* v. *Heath, supra; Matter of Keep,* 17 N. Y. St. Repr. 812; *Blaine* v. *Richardson,* 193 N. Y. Supp. 612, 621. All that the findings and decree purport to decide is that Mrs. Purvee is entitled to administer the estate of Mrs. Barrett. They are silent as to who is entitled to the property. That question was not before the court. A judgment is not *res judicata* as to matters which are considered only collaterally or incidentally; it is not conclusive of matter inferred by argument from the judgment. *People ex rel. Bridgemen* v. *Hall,* 104 N. Y. 170, 179.

One who invokes the rule of *res judicata* as a defense must establish affirmatively the facts bringing the case within the application of the rule. *Seed* v. *Johnston,* 63 App. Div. 340.

Before defendant can make the surrogate's decree conclusive evidence that plaintiff is estopped from claiming a specific performance of this contract it must be made to appear, either by the record in the surrogate's proceedings or by extrinsic evidence, that the precise question here involved was raised and determined in the Surrogate's Court. *Bell* v. *Merrifield,* 109 N. Y. 202; *Cuccurullo* v. *Societa Italiana,* 102 App. Div. 276. Defendant has not brought herself within these rules.

*Brantingham* v. *Huff, supra,* seems to be decisive of this question. It was there held that a decree of a Surrogate's Court made in probate proceedings denying the application of an alleged adopted child for decree to intervene, on the ground that there was no valid adoption, was not a bar to the maintenance of an action for specific performance of the contract upon which the child relied.

For the above reasons I am constrained to hold that the defense of *res judicata* is unavailing.

This disposes of the questions raised by Mrs. Purvee. I think that plaintiff is entitled to a decree of specific performance. Judgment is directed in accordance with the foregoing opinion. Findings may be submitted.

*Judgment accordingly.*